# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT A. GATTA, JR.,**                        Chapter 7
          Debtor                                 Case No. 05-20524-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are the Debtor's Motion to Avoid Judicial Lien on Residential Real Estate (the "Lien Avoidance Motion") and the Opposition to the Motion filed by Dianne and Geleme Pierre (the Pierres). The Pierres object to the Debtor's use of 11 U.S.C. § 522(f)(1) to avoid a judicial lien they obtained against property located at 174 Jefferson Avenue, Everett, Massachusetts (the Everett Property"), owned jointly by the Debtor, Robert A. Gatta, Jr. ("Gatta" or the "Debtor"), and Sandra D. Corneau ("Corneau"), as joint tenants with right of survivorship. The Pierres assert that the Everett Property is

1

not the Debtor's principal residence, but rental property that he does not occupy. The issue presented is whether the Debtor occupied or intended to occupy the Everett Property as his principal residence at the time he recorded a declaration of homestead pursuant to Mass. Gen. Laws ch. 188, § 1 on September 20, 2005, three weeks before he filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The issue is complicated by the Debtor's claim that he lives part-time in two places, namely at the Everett Property where he stays with his daughter several days per week and also at the Revere, Massachusetts home of his wife, whom he married on July 30, 2005, approximately seven weeks before he executed the declaration of homestead.

The Court conducted an evidentiary hearing with respect to the Lien Avoidance Motion and the Pierres' Opposition on January 8, 2007. Three witnesses testified and 12 exhibits were introduced in evidence. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor acquired his interest in the Everett Property by Quitclaim Deed on September 30, 1999. He took title to the Everett Property with Corneau, with whom he had a long-term relationship and a teenage daughter. The Everett Property contains three apartments. The Debtor and Corneau shared one apartment until at least January of 2004. He and Corneau continue to share expenses associated with the Everett Property. Corneau testified that the Debtor gives her "money and child support checks separately." (Tr. p. 20). Corneau, however, pays the electric bill which has an outstanding balance of $3,300.00.

2

Although originally employed as a computer programer and truck driver, the Debtor eventually went into the construction business, doing business as Excalibur Construction, and obtained a Construction Supervisor's license from the Massachusetts Board of Building Regulations. Two licenses were submitted in evidence. The first, which expired on September 5, 2005, lists Gatta's address as 174 Jefferson Avenue, Everett, Massachusetts - - the Everett Property. The second, which remains in effect, lists his address as 544 Washington Ave., Revere, Massachusetts. That address is the home and business address of his spouse, Kimberly Wall ("Wall"). Wall and her mother own a corporation known as All The Best Construction Company, Inc. The Debtor is its treasurer and has check writing authority. The Debtor testified at his deposition, the transcript of which was submitted in evidence, that he does some contract work for the company, adding: "I farm myself out, basically, I'm a subcontractor."

On or around December 17, 2003, the Debtor and the Pierres executed a written contract for a project located at 160 Garland Street, Everett, Massachusetts. The Debtor estimated the cost of the project cost at $147,000.00. Gatta did not complete the work, and the Pierres eventually commenced a civil action against him in the Middlesex Superior Court Department of the Massachusetts Trial Court. Prior to commencing suit, however, the Pierres' counsel attempted to deliver a certified "Chapter 93A letter," dated February 17, 2004, to the Debtor using the address of the Everett Property. The letter was unclaimed and was returned to the Pierres' counsel on or around March 6, 2004.

On January 13, 2004, approximately one month before the Pierres' counsel sent Gatta

3

a letter pursuant to Mass. Gen. Laws ch. 93A, Corneau obtained an Abuse Prevention Order against the Debtor from the Malden District Court. The order, violation of which was punishable by imprisonment or fine, required the Debtor, to, among other things, "immediately leave and stay away from the plaintiff's residence." Two days later, Corneau obtained a modification of the order which awarded her custody of Amanda Gatta and required the Debtor not to contact Amanda "either in person, by telephone, in writing or otherwise, either directly or through someone else, and to stay at least 50 yards away from them unless you receive written permission from the Court to do otherwise." The restraining order was served, in hand, on the Debtor at 544 Washington Ave., Revere, Massachusetts. According to Corneau, she believed that Gatta was living there at that time because she had found out that he had been seeing Wall. (Tr. p. 14).

Approximately 10 days after obtaining the restraining order, Corneau requested the Malden District Court to vacate the order. On January 26, 2004, the court vacated the restraining order. The Debtor testified that after the issuance of the restraining order he "was out of the house approximately about three and a half months" . . . "because of - - first, originally because of the restraining order and then also because of the fact that we weren't getting along, I was actually staying in motels." (Tr. p. 30). Corneau, on the other hand, testified that Gatta was living with her in February of 2004.

The Pierres obtained a default judgment against Gatta from the Middlesex Superior Court on December 14, 2004. Prior to the entry of judgment, the Debtor, on December 12, 2004, appeared at an assessment of damages hearing in the Superior Court. In attempting

4

to remove the default, Gatta admitted that he told the Superior Court judge "I had a restraining order at the time and I was res - - I was staying at - - I may have said 544 Washington Ave. I'm not sure." On cross-examination, the Debtor was asked whether the restraining order was in effect in December of 2004. Initially, he admitted that there was no restraining order in effect in December of 2004, stating: "Right. In December 2004 I was living in Jefferson Ave." (Tr. p. 32). He then contradicted himself, insisting that the restraining order, which had been vacated on January 26, 2004, was still in effect. (Tr. p. 33). Indeed, he brought the copy of the restraining order to the hearing before the Superior Court. Additionally, the Debtor testified that he was "out of the house before Christmas [of 2004]." (Tr. p. 33). Because the Debtor was unsuccessful in persuading the court to remove the default judgment entered against him, the Pierres eventually obtained an execution on January 27, 2005, which they recorded six months later on August 9, 2005.

On July 30, 2005, the Debtor married Wall who, as noted above, resides at 544 Washington Ave., Revere, Massachusetts. On the marriage certificate, he listed 174 Jefferson Avenue, Everett, Massachusetts as his address, although it is clear to this Court that he was not living there at the time. Referring to the summer of 2005, the Debtor stated: "I was living at Jefferson Ave. I was also living in motels, and I was living with her [sic] because I was also dating a couple of other women at the time." (Tr. p. 53). Following their marriage ceremony, Gatta and Wall went on a honeymoon to the Carribean and did not return to the Boston area until August 21, 2005. Gatta did not advise Corneau of his marriage plans. She learned of his marriage at about the same time she learned that the

5

Pierres had obtained a lien on the Everett Property.  Gatta testified during his deposition,

the transcript of which was submitted in evidence, that his marriage was "a surprise" to

his daughter.

Corneau admitted that when she received notice of the Pierres' execution in August

of 2005 she was irate.  Although she testified that she did not specifically recall telephoning

the Pierres' attorney and telling him that Gatta no longer resided at the Everett Property,

she testified that she remembered calling Gatta "because that's where my anger was

directed. . . ." (Tr. p. 23).

Corneau testified that Gatta now stays at her home with her daughter, on weekends,

"whenever I want[ . . . ] to go out and he comes on holidays." (Tr. p. 17).  She indicated that

when he stays at her home he sleeps in a finished bedroom in the basement and shares the

bathroom on the first floor.  She explained that the reason for this arrangement is to

facilitate Gatta's visitation with her daughter.  She testified:

> My daughter doesn't want to go to Revere.  She doesn't - - neither one,
> myself or my daughter, are pleasant or do get - - we don't get along with his
> wife, and so that would be the reason that he - - she's - - we've all agreed for
> him come there [the Everett Property].  Plus, there was a transition period
> between my mother dying and him leaving and I thought that he needed to
> be there more often, so that was what - - how we came about that
> arrangement.  I though that was convenient for everybody.

(Tr. p. 21).

The Debtor testified that he spends between two and four nights per week at the

Everett Property and that he receives most of his mail there.  He testified that "right now

I'm still spending time in both houses."  (Tr. p. 28).  On cross examination, he testified that

6

"I stay, you know, two to three nights at Jefferson Ave. and I stay - - I stay at Washington Avenue after that with my wife." (Tr. p. 51).  He also stated during his deposition that "[m]y primary is still 174 Jefferson Avenue because I plan on moving back in there with my wife as soon as my daughter graduates," adding "[m]y wife is going to be moving into that home" and "Sandra is going to be getting out."  Corneau, however, stated that she planned on staying in the Everett Property, where her brother and his son also have an apartment.

The Everett Property has a third apartment which was occupied by William Bradley ("Bradley").  Gatta and Bradley, who was eventually evicted for non-payment of rent, were involved in an altercation in February of 2006 when Gatta employed a plumber to make repairs to the heating system.  Bradley assaulted Gatta with a sword.  The police report was submitted in evidence.  It listed Gatta as the Victim/Witness with the following address: 544 Washington Avenue, Revere, Massachusetts.  Additionally, Bradley submitted an affidavit, which was submitted in evidence without objection, in which he stated that during the period of his tenancy Gatta moved and "has not lived there since and was never a resident of 174 Jefferson Avenue.  Sandra lives with her daughter on the first floor, her brother lives on the second floor with his son Christopher.  Robert Gatta is a resident of Washington Avenue, Revere, Massachusetts."  Although the Debtor's lawyer did not object to the submission of the affidavit, Gatta dismissed Bradley's affidavit as unreliable in view of his eviction and criminal conviction for assault with a dangerous weapon.

Gatta testified that he receives most of his mail at the Everett Property, that the

7

Everett address is listed on his commercial driver's license, that when he last voted he voted in Everett, and that he pays excise taxes in Everett.  He explained that the 544 Washington Avenue, Revere address appearing on his Construction Supervisor's license was "because that's where her business address was out of," an apparent reference to his wife's construction company, All The Best Construction Company, Inc., for which he works as a subcontractor.  The Debtor also testified that he registered his 2001 Harley-Davidson motorcycle at the Revere address because he stores it there.

Geleme Pierre testified, without objection,  about his attempts to contact the Debtor after he walked off the job at Garland Street, Everett, Massachusetts.  He stated: "I've gone several times at 174 Jefferson Ave. [sic], and Sandra told me he doesn't live there anymore. I've seen her at the supermarket, and I ask her, 'Can you help me?' and she just say, 'Hey, I have no idea where he is.  I don't care.'" (Tr. p. 61).  Mr. Pierre also recalled that Gatta told the Superior Court judge that he was living on Washington Avenue in Revere, Massachusetts.

The Debtor filed a voluntary petition under Chapter 7 on October 9, 2005, three weeks after recording a declaration of homestead.  On his petition he listed his street address as 174 Jefferson Avenue, Everett, Massachusetts.  He listed an ownership interest in the Everett Property.  On Schedule C-Property Claimed as Exempt, the Debtor  claimed a homestead exemption in the Property in the sum of $144,065.67 pursuant to Mass. Gen. Laws ch. 188, § 1.  On Schedule D-Creditors Holding Secured Claims, the Debtor listed the Pierres as holders of a judicial lien against the Everett Property in the sum of $96,594.31.

8

On Schedules I -Current Income of Individual Debtor(s), the Debtor disclosed that he is a *single*, self-employed carpenter, with one dependent, earning $1,000.00 in regular monthly income from the operation of a business, and $1,850.00 in income from real property.[1] On Schedule J-Current Expenditures of Individual Debtor(s), the Debtor did not list any expenses for "Alimony, maintenance, and support paid to others" or "Payments for support of additional dependents not living at your home."[2]

## III. DISCUSSION

The issue before the Court is whether the Debtor may avoid the Pierres' lien on the ground that it impairs his claimed homestead exemption.  Although the Pierres did not object to the Debtor's claimed homestead exemption within 30-days of the conclusion of the meeting of creditors in accordance with Fed. R. Bankr. P. 4003(b), this Court, in In re Tinker, 355 B.R. 380 (Bankr. D. Mass. 2006), adopted the reasoning in In re Schoonover, 331 F.3d 575 (7th Cir. 2003), and In re Maylin, 155 B.R. 605 (Bankr. D. Me. 1993), holding that a judicial lienholder's failure to object to a claimed exemption does not bar a later objection to a lien avoidance motion.  The Court stated the following:

> The denial of the right to assert the validity of the debtor's exemption as a defense to a § 522(f) motion would defeat the secured creditor's option not to participate in the bankruptcy case. To repeat, "[j]ust as § 522(1) and Rule 4003(b) put the onus of timely objection on general unsecured creditors, so § 522(f) and Rules 4003(d) and 9014 put the onus of contesting a lien on

---

[1] As discussed above, the Debtor was married to Kimberly Wall at the time he filed his petition.

[2] As noted above, Corneau testified that she received child support from the Debtor.

debtors; the clock for lienholders runs from the motion under § 522(f) and not from the meeting of unsecured creditors." <u>Schoonover</u>, 331 F.3d at 578.

<u>Tinker</u>, 355 B.R. at 386 (footnote omitted).  Accordingly, the Pierres are not barred from contesting the Debtor's Lien Avoidance Motion, although they did not object to his claimed homestead exemption within 30-days of the conclusion of the meeting of creditors held pursuant to 11 U.S.C. § 341(a).  *See* Fed. R. Bankr. P. 4003(b).

Pursuant to 11 U.S.C. § 522(f)(1),[3] a debtor may avoid a judicial lien which impairs an exemption. "In order to be successful in avoiding a judicial lien pursuant to § 522(f), the Court must determine: (1) whether the debtor is entitled to an exemption; (2) the extent to which the lien may be avoided; and (3) whether the lien does in fact impair the exemption." <u>Tinker</u>, 355 B.R. at 382 (citing <u>In re Mariano</u>, 311 B.R. 335, 340 (Bankr. D. Mass.2004);  <u>In re Betz</u>, 273 B.R. 313, 320-21 (Bankr. D. Mass. 2002)).  Moreover, the debtor has the burden of proof on all avoidance issues. <u>In re DeCarolis</u>, 259 B.R. 467, 471 (B.A.P. 1st Cir. 2001)(citing <u>In re Kerbs</u>, 207 B.R. 211, 214 (Bankr. D. Mont.1997)).  Specifically, the Debtor must establish his interest in the asset claimed as exempt; that he is entitled to the exemption; that the lien impairs the exemption; and that the lien is a judicial lien.  <u>DeCarolis</u>, 259 B.R.

---

[3] The statute provides, in relevant part:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled... if such lien is (a) a judicial lien . . . .

11 U.S.C. § 522(f)(1)(A).

at 471.[4]

The issue in this case is whether the Debtor is entitled to the homestead exemption he claimed on Schedule C.  If he is not, he will have failed to satisfy one of the four elements set forth in DeCarolis, and he cannot avoid the judicial lien obtained by the Pierres.

Section 1 of the Massachusetts Homestead Statute provides, in relevant part, the following:

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all *who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence.* Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies . . . .

---

[4] In the situation where a creditor objects to a debtor's claimed exemption, in contrast to the situation present in this case, the objecting creditor has the burden of proof.  In In re Marrama, 307 B.R. 332, 336 (Bankr. D. Mass. 2004).  The court in Marrama explained:

> The party objecting to a claim of exemption bears the burden of proving that the debtor did not properly claim the exemption. Fed. R. Bankr. P. 4003(c). Thus, the objecting party bears the burden to establish that the debtor did not create a valid estate of homestead, or alternatively, that it no longer existed at the time of the filing of the bankruptcy. In re Edwards, 281 B.R. 439, 446 (Bankr. D. Mass. 2002).
>
>  Furthermore, "[if] the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper . . . the burden of persuasion, however, always remains with the objecting party." Carter v. Anderson, 182 F.3d 1027, 1029 (9th Cir.1999).

Marrama, 307 B.R. at 336.

11

Mass. Gen. Laws ch. 188 § 1 (emphasis supplied).  "[T]he requirement (of occupancy or

intent to occupy as a principal residence) appears in the statute only as  a limitation on the

*acquisition* of the estate of homestead." In re Webber, 278 B.R. 294, 298 (Bankr. D. Mass.

2002)(footnote omitted, emphasis in original).  Thus, the determinative issue in this case

is whether the Debtor occupied or intended to occupy the Everett Property, as his principal

residence, at the time he recorded the Declaration of Homestead.  The Debtor has the

burden of establishing that he occupied or intended to occupy the Everett Property as his

principal residence on September 20, 2005.

Based upon the chronology developed during the trial, the Court finds that the

Debtor married Wall on July 30, 2005, without apprising Corneau or his daughter of his

marriage plans; that he went on a three-week honeymoon after the wedding; and that he

returned to the Boston area on August 21, 2005 to be greeted by a former girlfriend who

was upset and irate about the lien affecting the Everett Property.  The Court further finds

that, one month later, Gatta recorded a declaration of homestead with respect to the Everett

Property, ostensibly evincing his occupancy or intent to occupy it as his principal residence.

The Court finds that the Debtor's testimony both during the trial and during his

deposition was evasive, inconsistent, and incredible.  The Everett Property was not the

Debtor's principal residence on September 20, 2005.  The Debtor's conduct in marrying

Wall without disclosing his intention to do so to his daughter or his long-term companion,

Corneau, coupled Corneau's discovery of the judicial lien on the Everett Property while the

Debtor was on his honeymoon, compels the conclusion that the Debtor was not a welcome

12

guest at the Everett Property in the weeks after his return from his honeymoon.  Although

homestead exemptions must be construed liberally in favor of debtors, In re Garran, 338

F.3d 1, 6 (1st Cir. 2003) (citing Shamban v. Masidlover, 429 Mass. 50, 705 N.E.2d 1136, 1138

(1999)), this Court cannot accept the Debtor's testimony that his principal residence was

the same as that of his spurned girlfriend and not that of his wife whom he had just

married.  The Court is not persuaded that spending time at the Everett Property two or

three days per week satisfies the requirement of the Homestead statute.  Moreover, the

Court is not persuaded by the Debtor's testimony that he receives mail at the Everett

Property and that he pays excise taxes in Everett.

The Court finds that Corneau's testimony that the Debtor resides at 174 Jefferson

Avenue is tinged with bias and that she exaggerated the extent of the Debtor's occupancy

following his return from his honeymoon.  Because of the Debtor's conduct, as Corneau

immediately recognized, her position vis à vis the Everett Property is untenable.  Unless

the Pierres' judicial lien is avoided, they may be able to force a sale of the Everett Property,

a circumstance that would jeopardize her and her family's continued enjoyment of their

residence.  Thus, Corneau had every incentive to assist the Debtor in convincing this Court

that he occupied the Everett Property as his principal residence within two month of his

marriage to Wall.  As noted, the Court finds that the Debtor's testimony was incredible and

he failed in his burden of proof, notwithstanding Corneau's testimony.

**IV. CONCLUSION**

Upon consideration of the foregoing, the Court shall enter an order denying the

Debtor's Lien Avoidance Motion.

By the Court,

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated:  March 28, 2007
cc: Richard M. Schifone, Esq., Alfred Paul Farese, Jr., Lynne F. Riley, Esq., U.S.Trustee